# United States Court of Appeals

## For the First Circuit

No. 02-2073

BATH IRON WORKS CORP.;
ONEBEACON f/k/a COMMERCIAL UNION YORK INSURANCE CO.,

Petitioners,

v.

UNITED STATES DEPARTMENT OF LABOR,

Respondent,

GERTRUDE L. KNIGHT,

Intervenor, Claimant.

PETITION FOR REVIEW OF A DECISION AND ORDER OF THE

UNITED STATES DEPARTMENT OF LABOR BENEFITS REVIEW BOARD

Before

Selya, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Richard F. Van Antwerp, with whom Thomas R. Kelly and
Robinson, Kriger & McCallum were on brief, for petitioners.

G. William Higbee, with whom James G. Fongemie and McTeague,
Higbee, Case, Cohen, Whitney & Toker, PA were on brief, for
intervenor-claimant.

July 17, 2003

**LIPEZ**, **Circuit Judge**.    Petitioners Bath Iron Works Corporation and OneBeacon (collectively, "BIW") seek review of an unpublished decision and order of the United States Department of Labor Benefits Review Board ("BRB" or "Board") which upheld the determination of an Administrative Law Judge ("ALJ") that intervenor-claimant Gertrude L. Knight is entitled to workers' compensation benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950, for the death of her husband William due to asbestos-induced cancer.  BIW insists that both the ALJ and the Board erred when they concluded that Knight's claim for benefits had been timely presented.  After a careful review of the record, we affirm the Board's decision and deny the petition for review.

## I.

William R. Knight worked at BIW's shipyard in Bath, Maine, from September 1941 through January 1986.[1]  While William's job responsibilities varied over the decades, his duties for much of his tenure included the cutting, handling, and installation of asbestos insulation.  Even when he was not directly working with asbestos, he labored in close proximity to other employees who were.  In 1979, however, he ceased working with asbestos-based

---

[1] Due to temporary layoffs, military service, and other interruptions, William's employment was not continuous.

products.  Seven years later, in 1986, William retired from BIW at the age of sixty-one.

William enjoyed a normal retirement until ten years later when, in early 1996, he fell ill with pain in his abdomen.  In April of that year he went to see his family physician who documented William's weight loss, loss of appetite, night sweats, and a questionable CT scan.  The family physician, in turn, referred William to a surgeon for further evaluation and a series of tests.  First, an MRI of the liver uncovered a suspicious mass.  Next, an esophagogastroduodenoscopy showed nothing remarkable in the esophagus, stomach, or duodenum.  A subsequent chest x-ray showed no abnormality of the lungs.  A laparoscopy conducted on May 31, however, uncovered widespread carcinomatosis throughout the abdominal area.  This untreatable cancer led to a rapid decline in William's health, and he died less than three months later.  His death certificate listed as the cause of death "adenocarcinoma, primary unknown" of "3 mos." duration.

Three years later, in October 1999, William's widow Gertrude filed a claim for compensation under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 (the "Act").  She sought death and funeral benefits, see id. § 909, as well as compensation for William's unpaid medical expenses, see id. § 907.  BIW controverted the claim, and the matter was eventually referred to an ALJ for adjudication.  A hearing was held in November 2000,

at which only Gertrude testified.  At the hearing and in written submissions to the ALJ, BIW argued that Gertrude's claim was untimely since it was filed over three years after William's death, in contravention of the two-year statute of limitations for death benefits due to occupational disease.  See id. § 913(b)(2). Gertrude responded by averring that she first learned of a causal link between William's death, asbestos, and his employment in August 1999; therefore, she argued, she had complied with the statute of limitations.  See id. (indicating that claim is timely if filed "within two years after the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability").

In May 2001, the ALJ issued a detailed decision and order rejecting BIW's argument on the statute of limitations defense and awarding benefits to Gertrude.[2]  After reciting the facts as he found them, he concluded that Gertrude "had no reason to believe, much less suspect, that there existed a relationship between her husband's disease, his death, and his employment" until August 1999.  He also concluded that there was "no basis for finding that . . . [Gertrude] 'should have been aware' that her husband's death was the result of his exposure to asbestos at the shipyard."  He

---

[2] The decision and order resolved several other issues not contested on appeal.

awarded death benefits to Gertrude totaling $391.22 per week, reimbursement for William's funeral and unpaid medical expenses, interest, and attorneys' fees.

On appeal, the BRB affirmed. In its unpublished, per curiam decision, the Board concluded that the ALJ had "thoroughly weighed the evidence of record, and rationally relied on claimant's credible testimony, in finding that she did not become aware of the relationship between her husband's disease, death, and employment, until 1999." It indicated that under the Act, "it is presumed that claimant's notice of injury and claim for benefits were timely filed," and that the burden was on BIW to demonstrate that the claim was untimely. See 33 U.S.C. § 920(b). After briefly surveying the facts as found by the ALJ, the Board concluded that the ALJ's decision was "supported by substantial evidence," and therefore affirmed. This petition for review ensued.

## II.

The only issue in this appeal is the propriety of the ALJ's application of the Act's relevant statute of limitations, which provides in pertinent part:

> [A] claim for compensation for death or
> disability due to an occupational disease
> which does not immediately result in such
> death or disability shall be timely if filed
> within two years after the employee or
> claimant becomes aware, or in the exercise of
> reasonable diligence or by reason of medical
> advice should have been aware, of the
> relationship between the employment, the
> disease, and the death or disability . . . .

-5-

33 U.S.C. § 913(b)(2). This subsection creates a "discovery rule" of accrual, deferring the commencement of the statute of limitations until an employee or claimant has or should have an awareness "of the relationship between the employment, the disease, and the death or disability." Id.

BIW focuses on one phrase in the statute: "in the exercise of reasonable diligence or by reason of medical advice should have been aware . . . ." BIW concedes that the ALJ made sufficient factual findings to support his conclusion that Gertrude could not have been aware "by reason of medical advice" of any relationship between William's death and work-related asbestos exposure. BIW maintains, however, that the ALJ failed to make detailed factual findings concerning Gertrude's "exercise of reasonable diligence." This failure, according to BIW, constitutes legal error mandating reversal. Moreover, BIW insists that Gertrude "should have suspected enough about the asbestos-relatedness of her husband's death to have conducted an investigation and filed a claim shortly after his death." BIW urges us to rule "as a matter of law" that "no reasonable fact finder" could have concluded otherwise, and that the Board therefore erred when it affirmed the decision of the ALJ. See id. § 921(b)(3) ("The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole.").

-6-

The scope of our review of the Board's affirmance is constrained by our precedent. "We examine the record for material errors of law or for impermissible departure from the familiar 'substantial evidence' rubric in connection with the Board's assessment of the hearing officer's factual findings." Barker v. U.S. Dept. of Labor, 138 F.3d 431, 434 (1st Cir. 1998); see Bath Iron Works v. Brown, 194 F.3d 1, 3 (1st Cir. 1999) (indicating that we "review[] the BRB's decision on legal issues de novo and determine[] whether the Board adhered to the 'substantial evidence' standard when it reviewed the ALJ's factual findings"); Bath Iron Works v. White, 584 F.2d 569, 573-74 (1st Cir. 1978); see also Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 237 (3d Cir. 1979) ("Case law has established . . . that this court is to review the decisions of the Benefits Review Board for errors of law, and to make certain that the BRB adhered to [the substantial evidence] provision [of 33 U.S.C. § 921(b)(3)]." ).

The Board held that the ALJ applied the correct legal standard in ruling on the statute of limitations question. This presents a pure question of law that we, like the Board, will review de novo. See Old Ben Coal Co. v. Dir., Office of Workers' Comp. Programs, 292 F.3d 533, 538 (7th Cir. 2002) ("[A] failure by the ALJ to apply the correct legal standard presents a question of law which we review de novo."). Our review of the ALJ's application of the correct standard is another matter. Courts

reviewing the application of subsection (a) of 33 U.S.C. § 913 have indicated that it is a fact-bound determination subject to deferential review.[3] For example, the Fourth Circuit in <u>Newport News Shipbldg. & Dry Dock Co.</u> v. <u>Parker</u>, 935 F.2d 20 (4th Cir. 1991), affirmed the BRB's reversal of an ALJ's finding that the claimant should have been aware of his latent disability. The Fourth Circuit held that "there was no substantial evidence to support the ALJ's decision." <u>Id.</u> at 27.

Other courts have also used the "substantial evidence" standard in reviewing § 913(a) determinations. <u>See</u>, <u>e.g.</u>, <u>Paducah Marine Ways</u> v. <u>Thompson</u>, 82 F.3d 130, 135 (6th Cir. 1996) ("The section 913(a) statute of limitations begins to run only when the claimant is aware or reasonably should be aware both that the injury is work-related, and that the injury will impair the claimant's wage-earning capacity. The ALJ's finding [regarding the same] . . . is supported by substantial evidence in the record as

---

[3] Subsection (a) applies to injuries or death not resulting from occupational disease, and provides in pertinent part:

> Except as otherwise provided in this section, the right to compensation for disability or death under this chapter shall be barred unless a claim therefore is filed within one year after the injury or death. . . . The time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment.

33 U.S.C. § 913(a).

a whole."); <u>Duluth, Missabe & Iron Range Ry. Co.</u> v. <u>Dir., Office of Workers' Comp. Programs</u>, 43 F.3d 1206, 1208 (8th Cir. 1994) ("[T]he ALJ's calculation of . . . the relevant awareness date was supported by substantial evidence in the record as a whole."). We have previously indicated that a finding of compliance with section 912's notice provision is reviewable only under the "substantial evidence" standard. <u>See</u> <u>Bath Iron Works</u> v. <u>Galen</u>, 605 F.2d 583, 586 (1st Cir. 1979) (reviewing ALJ's finding that claimant's "unawareness of his injury was reasonable" for substantial evidence).[4] Finally, we note that the Supreme Court of California, in interpreting its state workers' compensation statute, has long held that "whether an employee should have known in the exercise of reasonable diligence that his disability was the result of his employment [is] a question of fact." <u>Chambers</u> v. <u>Workmen's Comp. Appeals Bd.</u>, 446 P.2d 531, 533 (Cal. 1968) (citing <u>Pac. Indem. Co.</u> v. <u>Indus. Accident Comm'n</u>, 214 P.2d 530, 532 (Cal. 1950)).

---

[4] The pertinent portion of section 912 has remained unchanged since <u>Galen</u>:

> Notice of an injury or death . . . shall be given within thirty days after the date of such injury or death, or thirty days after the employee or beneficiary is aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of a relationship between the injury or death and the employment.

33 U.S.C. § 912(a).

We see no reason to treat 33 U.S.C. § 913(b)(2) any differently than these comparable statutes. An ALJ's ultimate conclusion of when a claimant "becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the relationship between the employment, the disease, and the death or disability," 33 U.S.C. § 913(b)(2), does not present a pure question of law amenable to de novo appellate review. Rather, this fact-intensive determination is one that a reviewing tribunal should disturb only if unsupported by "substantial evidence."

In reviewing for substantial evidence, we assess the record as a whole, and we will affirm so long as we are satisfied that the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Sprague v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor, 688 F.2d 862, 865 (1st Cir. 1982). This benchmark is notoriously difficult to overcome on appellate review. While "substantial evidence" is "more than a scintilla," it certainly does not approach the preponderance-of-the-evidence standard normally found in civil cases. Id. Rather, we will accept the findings and inferences drawn by the ALJ, whatever they may be, unless they are "irrational." Barker, 138 F.3d at 434; see also Bath Iron Works Corp. v. Dir., Office of Workers' Comp. Programs, U.S. Dept. of Labor, 109 F.3d 53, 56 (1st Cir. 1997) ("[I]t is immaterial that

-10-

the facts permit diverse inferences as long as those drawn by the ALJ are supported by evidence."). We have also recognized that it is the ALJ's unique prerogative in the first instance to "draw inferences and make credibility assessments, and we may not disturb his judgment and the Board's endorsement of it so long as the findings are adequately anchored in the record." Bath Iron Works Corp. v. Dir., Office of Workers Comp. Programs, 244 F.3d 222, 231 (1st Cir. 2001).

Finally, we note that the Board, citing Shaller v. Cramp Shipbuilding & Dry Dock Co., 23 B.R.B.S. 140 (1989), states that pursuant to 33 U.S.C. § 920(b), "it is presumed that a claimant's notice of injury and claim for benefits were timely filed." In a similar vein, the ALJ, citing § 920(b) and Fortier v. General Dynamics Corp., 15 B.R.B.S. 4 (1982), appeal dismissed sub nom, Insurance Co. of North America v. Benefits Review Board, 729 F.2d 1441 (2d Cir. 1983), stated that "[i]t is well-settled that the Employer has the burden of establishing that the claim was not timely filed," and that this presumption places the burden on the employer to prove otherwise. We note that § 920(b) only references the sufficiency of the notice of claim, and does not mention the timeliness of the actual filing of the claim. However, § 920(a) explicitly creates a presumption that a claim for compensation "comes within the provisions of this chapter." 33 U.S.C. § 920(a). Moreover, "[i]t is well established that the Act 'must be liberally

-11-

construed in conformance with its purpose and in a way which avoids harsh and incongruous results.'" Stevenson v. Linens of the Week, 688 F.2d 93, 98 (D.C. Cir. 1982) (quoting Voris v. Eikel, 346 U.S. 328, 333 (1953)). Lastly, we note that at no point over the course of this litigation has BIW argued against this presumption and the attendant burden of proof. We therefore conclude that § 920(b) does create a presumption of timeliness under § 913(b)(2), and that the burden is on the employer to demonstrate noncompliance with the requirements of § 913(b)(2). See Fortier 15 B.R.B.S. at 7 ("At the outset, it is presumed that the claim was timely filed."); cf. Am. Jur. 2d Evidence § 160 (2003) ("The defendant has the burden of proof with regard to counterclaims and most affirmative defenses."). With these principles in mind, we turn to the ALJ's decision in this case.

## III.

The ALJ found that Gertrude "first gained an awareness of the relationship between her husband's employment, his disease, and his death" in late August or early September 1999. In August 1999, Dr. Douglas Pohl, at the behest of Gertrude's attorney, examined William's medical records and his pathology specimens taken back in 1996. Dr. Pohl concluded that William had died of mesothelioma, a relatively rare form of cancer found almost exclusively in persons who have had long-term exposure to asbestos. According to the ALJ, Gertrude credibly testified at the hearing that she first realized

-12-

that there was a connection between her husband's death, asbestos, and her husband's job after reading Dr. Pohl's medical report.[5] She also testified that back in 1996, none of William's doctors had told her that William's cancer was asbestos-related, nor does the record indicate that William himself had been apprised of the provenance of his cancer. Gertrude testified that she merely thought that her husband had some sort of "cancer of the abdomen" of unknown genesis. In light of this evidence, the ALJ concluded that Gertrude "had no reason to believe, much less suspect, that there existed a relationship between her husband's disease, his death, and his employment" until August 1999. Therefore, according to the ALJ, her claim filed in October of that year was timely.

BIW argues before us, as it did before the BRB, that the ALJ failed to engage in an extended discussion demonstrating that Gertrude's lack of awareness followed "the exercise of reasonable diligence." 33 U.S.C. § 913(b)(2). This failure, BIW insists, means that the ALJ was unaware of the proper legal standard he had to apply. Moreover, BIW maintains a reasonable fact-finder would have to conclude that Gertrude, if she had exercised reasonable diligence, would have become aware of the relationship between her husband's death and work-related asbestos exposure within months of

---

[5] It is unclear from the record whether Gertrude first learned of the contents of Dr. Pohl's report in August or September 1999. Since the doctor's report was dated August 27, 1999, we assume that Gertrude learned of its contents at that time.

his death.  We reject both of these positions, addressing them in reverse order.

As explained above, the ALJ indicated that Gertrude had "no reason to believe, much less suspect" any interrelationship existed.  BIW points us to facts which, it claims, fatally undermine this conclusion.  Gertrude testified that she was aware that some of her husband's colleagues at BIW and their widows had brought claims for benefits because of asbestos-related problems.  She also testified that William had come home many times covered in white powder which she knew to be asbestos.  As the ALJ noted, however, there was "no evidence . . . that [Gertrude] was aware of the specific nature of the health risks posed by asbestos in general or that asbestos causes mesothelioma."

BIW also points to a June 6, 1996, telephone call between Gertrude's daughter-in-law and William's family doctor.  According to the doctor's telephone logs, he apparently informed the daughter-in-law of operative findings and pathology reports indicating that William was suffering from "diffuse infiltrating, poorly differentiated malignant tumor, likely carcinomatosis, but to be considered also as anaplastic mesothelioma."  As the ALJ noted, however, there was no evidence that the substance of this conversation was ever communicated to Gertrude, and Gertrude herself testified credibly that she did not recall having any such discussion with her daughter-in-law.  Moreover, even assuming that

such a conversation took place, there was no evidence that the diagnosis of "anaplastic mesothelioma" would have had any meaning for Gertrude beyond what she already knew — i.e., "cancer of the abdomen."

The ALJ's finding that Gertrude had "no reason to believe, much less suspect" that William's malady had anything to do with asbestos is further supported by the ALJ's observation that prior to his death, William had not worked at BIW for ten years and had not been exposed to asbestos in almost twenty, and that William had "enjoyed a normal retirement." In sum, the ALJ did not irrationally conclude that prior to August 1999 Gertrude had no reason to suspect that William's death was related to his on-the-job asbestos exposure. The burden was on BIW to demonstrate to the contrary, and, according to the ALJ, BIW failed to do so. We conclude that this finding is supported by substantial evidence.[6]

In light of this finding, it is unsurprising that the ALJ did not comment further on Gertrude's "diligence" (or perceived

---

[6] BIW makes much of the fact that Gertrude testified that she initially sought the advice of an attorney because of financial considerations ("Well, I thought if I could get any benefits, I could use them."). We fail to see how Gertrude's motivation plays any role in the determination of when the statute of limitations began to run under 33 U.S.C. § 913(b)(2). At best, Gertrude's testimony regarding any financial considerations might (and we stress, might) have impugned her credibility. According to the ALJ, however, Gertrude was a credible witness. It is not for this court (or the BRB) to second-guess this credibility determination. Bath Iron Works Corp. v. Dir., Office of Workers Comp. Programs, 244 F.3d 222, 231 (1st Cir. 2001).

lack thereof). When the ALJ concluded that Gertrude had "no reason to believe, much less suspect" any interrelationship, the ALJ disposed of both the subjective (aware) and objective (should have been aware) components of the § 913(b)(2) inquiry. BIW is correct when it states that the "reasonable diligence" requirement of the statute means the sort of inquiry a reasonable person would have conducted in light of the surrounding facts and circumstances. See, e.g., Love v. Owens-Corning Fiberglass Co., 27 B.R.B.S. 148 (1993). This requirement, in effect, imputes to the claimant an awareness of what she could have learned if she had undertaken a reasonably diligent inquiry. However, if, as the ALJ found, Gertrude had "no reason to believe, much less suspect" (emphasis added) that William's cancer was anything other than fortuitous, then she certainly had no reason (or obligation) to begin a due-diligence investigation. See Jasinskas v. Bethlehem Steel Corp., 735 F.2d 1, 5 (1st Cir. 1984) (noting that "generalized suspicions unsupported by medical interpretations do not establish sufficient 'awareness' to set limitations period running when condition involves complex medical causality"); cf. United States v. Kubrick, 444 U.S. 111, 122 (1979) (imposing duty of inquiry on potential claimant under Federal Tort Claims Act, 28 U.S.C. § 2401(b), once he is in "possession of the critical facts that he has been hurt and who has inflicted the injury") (emphasis added). The ALJ did not have to elaborate further on the reasonable diligence issue in

light of his conclusion that Gertrude had no reason to suspect before August of 1999 that William's death was related to his on-the-job asbestos exposure. We therefore reject BIW's contention that the ALJ had somehow erred in his application of 33 U.S.C. § 913(b)(2).

## IV.

In light of applicable precedent which greatly constrains the scope of our review, we decline to disturb the judgment of the Benefits Review Board. For the foregoing reasons, BIW's petition for review must be **DENIED**.


**SO ORDERED**.