**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,

*Petitioner,*

v.

SHEILA HARRIS-SMALLWOOD;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

*Respondents.*

No. 02-1590

On Petition for Review of an Order
of the Benefits Review Board.
(01-566)

Argued: May 4, 2004

Decided: July 12, 2004

Before WILKINSON, KING, and GREGORY, Circuit Judges.

---

Petition for review denied by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Jonathan Henry Walker, MASON, MASON, WALKER
& HEDRICK, Newport News, Virginia, for Petitioner. Matthew Har-
ley Kraft, RUTTER MILLS, L.L.P., Norfolk, Virginia, for Respon-
dent Harris-Smallwood; Peter Brule Silvain, Jr., UNITED STATES
DEPARTMENT OF LABOR, Washington, D.C., for Director, Office

of Workers' Compensation Programs. **ON BRIEF:** Robert E. Walsh, RUTTER MILLS, L.L.P., Norfolk, Virginia, for Respondent Harris-Smallwood; Howard M. Radzely, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Mark S. Flynn, Acting Counsel for Longshore, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Newport News Shipbuilding and Dry Dock Company (the "Shipyard") petitions for review of a decision of the Benefits Review Board (the "BRB") affirming an administrative law judge's (1) award of benefits to Sheila Harris-Smallwood under the Longshore and Harbor Workers' Compensation Act, and (2) denial of the Shipyard's request for relief pursuant to section 8(f) of the Act. Because the administrative law judge's rulings were supported by substantial evidence, as the BRB correctly decided, we deny the petition for review.

### I.

### A.

In October 1987, Sheila Harris-Smallwood commenced employment with the Shipyard as a sheet-metal worker aboard ships. The next year, she developed problems with her left hand and was treated by Dr. Thomas Stiles. She was given temporary light-duty work restrictions and subsequently returned to her duties aboard ships. In February 1990, Harris-Smallwood injured her right leg while working aboard a ship. During her treatment for the leg injury, she was assigned to work in a building doing "grinding" work. In April 1991,

while performing such work, she began to experience problems with her right hand and wrist. She was initially seen by Dr. Peter Vonu but eventually was treated by Dr. Samuel Kline. Dr. Kline diagnosed her with carpal tunnel syndrome, treated her with injections, and initially limited her to light-duty work, requiring her to wear a splint full time and instructing her not to lift more than five pounds. By December 1992, Dr. Kline had increased the restriction to ten pounds but kept Harris-Smallwood on light-duty work. In February 1993, Dr. Kline released her to full work duties, with the exception that she was not to use vibratory tools.

Throughout the following year, Harris-Smallwood returned to Dr. Kline with various complaints of arm and hand pain. In March 1994, Dr. Kline again restricted her to light-duty work, that is, "no lifting greater than 10 pounds, no high torque, vibratory tools, or pulling." In July of that year, Dr. Kline continued Harris-Smallwood's work restrictions for one year, citing her repeated problems with tendinitis and carpal tunnel syndrome.

By 1995, Harris-Smallwood was reassigned to work in the sail loft, where she cut material from large bolts and sewed hoods, tents, or bags. In July 1995, she began experiencing problems with her left shoulder, for which she again visited Dr. Kline. Dr. Kline restricted Harris-Smallwood from "pulling cables" and added "no overhead lifting" to her work restrictions. He also treated her shoulder with medication and an injection. In October 1995, Dr. Kline wrote in his progress notes concerning Harris-Smallwood that "[a]pparently she is doing a new job which requires a lot of shoulder elevation. Is having pain. . . . I discussed her work capacity with her employer and she will be off work on Monday. She will return to see her supervisor on Monday and he will respect the fact that she needs to keep her elbow down at her side while working." Ten days later, on October 30, 1995, Dr. Kline wrote, "I cannot help but feel that a major component of her problem is that her new supervisor is not working well with her to determine the activities that are uncomfortable for her and avoid these. I discussed with Dr. Reid at the Shipyard."

Dr. Kline then referred Harris-Smallwood to Dr. Colin Hamilton. A Dr. Hamilton examined Harris-Smallwood on November 6, 1995, and reported:

> Greatly guards against allowing passive ROM and only actively abducted or forward flexed to approx. 90° [.] I then was able to passively fully forward flex and abduct in spite of her pain complaint and extensive facial grimacing. There was absolutely no restriction of passive motion and she had full passive E.R., which caused no pain complaint. Manifested the unusual response of complaining of left shoulder pain with simple elbow flexion against resistance with the shoulder in extension.

In sum, Dr. Hamilton reported "[n]o objective findings regarding the diffuse shoulder and neck complaints" and told Harris-Smallwood to take Advil or Aleve and do exercises. Dr. Hamilton said that Harris-Smallwood was fit to return to her duties with the same restrictions under which she had worked for the past two years.

Dr. Kline also referred Harris-Smallwood to Dr. Eric Mein. In August 1996, Dr. Mein renewed Dr. Kline's restrictions, prohibiting overhead lifting and lifting more than ten pounds. Harris-Smallwood suffered repeated flare-ups of her shoulder pain, and Dr. Mein excused her from work from August 21 through 25 and September 4 through 6. Dr. Kline extended Harris-Smallwood's work restrictions on a permanent basis, and Dr. Mein continued to treat her for shoulder pain until April 24, 2000.

Due to her shoulder restrictions, Harris-Smallwood's work in the sail loft was limited to using a sewing machine to make nylon bags and hoods. She continued to perform these limited duties until June 1, 1998, when she was terminated as part of a massive layoff at the Shipyard. Subsequently, when other employees were called back to work, a spokesperson for the Shipyard told Harris-Smallwood that she was not asked to return because the Shipyard was rehiring people who could work on the ship, and Harris-Smallwood was not able to do so because of her shoulder restrictions. Harris-Smallwood collected unemployment and eventually found a job working at a dry cleaner that paid less money than she earned at the Shipyard.

In May 2000, Harris-Smallwood was examined by Dr. Glenn Nichols, who reviewed her MRI and diagnosed her as suffering from degenerative tendinopathy/chronic tendinitis, tearing, lesion, and

degeneration in the shoulder. Nichols's impression of Harris-Smallwood was "chronic impingement syndrome of the left shoulder."[1] Nichols opined that Harris-Smallwood was unfit for duty in her previous job in the sail loft and that her "injury is the direct result of the repetitive lifting of heavy loads at work in the sail loft at Newport News Shipbuilding."

B.

On May 18, 1999, Harris-Smallwood filed a claim for benefits under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* (the "Act"), which provides benefits for disability or death arising from workplace injuries on the navigable waters of the United States and its related docks. *See id.* § 903(a). In July 2000, a hearing was held in Newport News, Virginia, before an administrative law judge ("ALJ"), who issued his decision on the Harris-Smallwood claim on March 23, 2001. The ALJ found that her claim was timely and that Harris-Smallwood suffered from a permanent partial disability due to her shoulder problems. He awarded benefits from the date of June 16, 1998, the day after Harris-Smallwood was laid off. In addition, the ALJ concluded that the Shipyard was not entitled to relief under section 8(f) of the Act, *id.* § 908(f), which allows disability benefits to be paid, after a certain point, from a special fund rather than by the employer when the claimant's disability does not result solely from the injury being compensated.

The Shipyard appealed to the BRB, which, on April 3, 2003, affirmed the ALJ's decision. The Shipyard now petitions for our review of the BRB's decision.[2] We possess jurisdiction pursuant to 33 U.S.C. § 921(c).

---

[1]Impingement syndrome is "the progressive pathologic changes resulting from mechanical encroachment of the acromion, coracoacromial ligament, coracoid process, or acromioclavicular joint on the rotator cuff, including reversible edema and hemorrhage, fibrosis, tendinitis, pain, bone spur formation, and tendon rupture." *Dorland's Illustrated Medical Dictionary* 1821 (30th ed. 2003).

[2]The Director of the Office of Workers' Compensation Programs participates in this proceeding as a respondent with respect to the issue of the Shipyard's eligibility for section 8(f) relief.

II.

In addressing a petition for review of a BRB decision, we must assess "whether the [BRB] observed its statutorily-mandated standard for reviewing the ALJ's factual findings." *Newport News Shipbldg. & Dry Dock Co. v. Stallings*, 250 F.3d 868, 871 (4th Cir. 2001) (internal quotations and citations omitted). That standard, as set forth in section 21(b)(3) of the Act, requires the BRB to determine whether the ALJ's factual findings are "supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). Substantial evidence is "more than a scintilla but less than a preponderance, and such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Norfolk Shipbldg. & DryDock Co. v. Faulk*, 228 F.3d 378, 380-81 (4th Cir. 2000) (internal citations and quotations omitted). Moreover, the findings of an ALJ "may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized [that] the scope of review of ALJ findings is limited." *Newport News Shipbldg. & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988).

III.

A.

We turn first to the question of whether the ALJ's award of benefits to Harris-Smallwood was supported by substantial evidence. As a preliminary matter, we must address the Shipyard's contention that Harris-Smallwood's claim was not timely filed. We conclude that, although her claim was filed three and a half years after she began experiencing shoulder problems, the claim is timely under the Act.

The Act provides that a claimant has no right to compensation for a disability or death unless a claim is filed within one year of the disability or death. 33 U.S.C. § 913(a). The Act further explains, however, that "[t]he time for filing a claim shall not begin to run until the employee or beneficiary is aware, or by the exercise of reasonable diligence should have been aware, of the relationship between the injury or death and the employment." *Id.* More specifically, the one-year period does not begin to run until the claimant becomes aware that the

injury is likely to impair her earning capacity. *See Newport News Shipbldg. & Dry Dock Co. v. Parker*, 935 F.2d 20, 26-27 (4th Cir. 1991); *see also Paducah Marine Ways v. Thompson*, 82 F.3d 130, 134 (6th Cir. 1996) (collecting decisions and observing that "all of the courts of appeals that have interpreted the amended section 913(a) have held that the statute of limitations begins to run only after the employee . . . knows or should know that the injury is work-related, and knows or should know that the injury will impair the employee's earning power").

Additionally, an employer bears the burden under the Act to prove that a claim was untimely filed. Pursuant to 33 U.S.C. § 920, "it shall be presumed, in the absence of substantial evidence to the contrary— (a) That the claim comes within the provisions of this chapter. (b) That sufficient notice of such claim has been given. . . ." 33 U.S.C. § 920; *see also Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 57 (1st Cir. 2003) (concluding that § 920(b) creates presumption that claim was timely filed and recognizing that employer bears burden of demonstrating non-compliance).

Applying these provisions of the Act, the ALJ correctly concluded that the Shipyard failed to meet its burden of demonstrating that Harris-Smallwood's claim was untimely filed. The Shipyard contends that "[t]he record reflects considerable lost work time based on Claimant's left shoulder complaints" during 1995 and 1996, and that Harris-Smallwood was thereby put on notice of the relationship between her injury and her earning capacity much earlier than one year before her claim was filed in May 1999. Although the Shipyard refers to certain medical records reflecting that Harris-Smallwood was excused from several days of work on various occasions during 1995 and 1996, the Shipyard has produced no evidence that Harris-Smallwood was not paid for those days. Absent any indication that she suffered an adverse economic impact due to her injury and con-comitant loss of work time, we have no reason to believe that Harris-Smallwood recognized or should have recognized the relationship between her shoulder injury and her loss of wage-earning potential prior to her layoff in June 1998. Therefore, the ALJ's conclusion that

Harris-Smallwood's claim was timely filed in May 1999 is, as the BRB correctly recognized, supported by substantial evidence.[3]

### B.

We turn now to the merits of Harris-Smallwood's claim for benefits. Having carefully considered the materials presented, we conclude that the BRB was correct in its determination that the ALJ's decision was supported by substantial evidence.

The Act provides compensation for disabilities or death resulting to an employee from injuries occurring on the navigable waters of the United States, including dry docks and buildings used for constructing or repairing vessels. 33 U.S.C. § 903(a).[4] "Disability" means, in pertinent part, "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment . . . ." *Id.* § 902(10). And "[t]he term 'injury' means accidental injury or death arising out of and in the course of employment . . . ." *Id.* § 902(2). The Shipyard maintains that the ALJ erred in his conclusion that Harris-Smallwood suffered an injury and a disability arising from that injury, as defined by the Act.

---

[3]The Shipyard also complains that Harris-Smallwood did not provide notice of her injury within thirty days, as required by 33 U.S.C. § 912(a). Section 912(d), however, provides that a claimant is excused from the notice requirement when, inter alia, the employer had knowledge of the injury. In light of the evidence in Dr. Kline's notes that he discussed Harris-Smallwood's shoulder injury and work limitations with the Shipyard on October 20 and 30, 1995, the ALJ's conclusion that Harris-Smallwood's failure to give the § 912(a) notice was excusable was amply supported by substantial evidence.

[4]Section 903(a) of Title 33 provides, in pertinent part, that

compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

33 U.S.C. § 903(a).

1.

In particular, the Shipyard takes issue with the ALJ's assessment of the medical opinions provided. In conducting our review, "[w]e defer to the ALJ's evaluation of the proper weight to accord conflicting medical opinions," *Stiltner v. Island Creek Coal Co.*, 86 F.3d 337, 342 (4th Cir. 1996), and we seek simply to ascertain whether the BRB "'adhered to its statutory standard of review of factual determinations.'" *Doss v. Dir., Office of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995) (quoting *Presley v. Tinsley Maint. Serv.*, 529 F.2d 433, 436 (5th Cir. 1976)).

In this matter, the ALJ was presented with the opinions of Drs. Mein and Nichols, along with the conflicting opinions of Drs. Hamilton and Kline. Dr. Mein had concluded, to a reasonable degree of medical certainty, that Harris-Smallwood's work in the sail loft in 1995 contributed to her chronic impingement syndrome of the left shoulder.[5] Dr. Nichols agreed, opining that Harris-Smallwood was "unfit for duty from her previous employment capacity as a sail-maker, working in the sail loft" and that "the patient's injury is a direct result of the repetitive lifting of heavy loads at work in the sail loft at Newport News Shipbuilding." Dr. Hamilton, oppositely, indicated that he "saw no evidence that [Harris-Smallwood] occurred [sic] any kind of accumulative trauma injury to her left shoulder as a result of her work

---

[5]The Shipyard asserts that Dr. Mein's opinion is not credible because it was "spoon-fed" to him by Harris-Smallwood's lawyer. As we have no reason to doubt Dr. Mein's professional integrity, we decline to assume that he would sign a statement that did not accurately reflect his reasoned medical opinion. Furthermore, the letter from the lawyer stated, "this letter, . . . to the best of my recollection, sets forth the opinions which you expressed at the time of our meeting, upon reviewing [Harris-Smallwood's] medical records and her work history. Assuming that the above does accurately set forth your opinions expressed at the time of our conference, please indicate agreement, where designated . . . ." The letter also provided a space for Dr. Mein to clarify his opinions, and he left that space blank, although he filled in other information where requested on the letter. Particularly in these circumstances, in which Dr. Mein had treated Harris-Smallwood for several years, we have no reason to believe that Dr. Mein's medical opinion was anything other than his own.

of September and November 6, 1995" and that Harris-Smallwood's "behaviors were consistent with at least some level of symptom magnification." Dr. Kline wrote a letter in which he agreed with Dr. Hamilton's report, although Kline's treatment notes draw connections between her job duties and her shoulder pain. *See supra* p. 3

Faced with these conflicting medical opinions, the ALJ had no option but to accept one set of findings and reject the other, and, absent an error of law, we must defer to his decision. *See Stiltner*, 86 F.3d at 342. And here, the ALJ made no error of law; rather, he "provide[d] a sufficient explanation for [his] rationale in crediting certain evidence." *See Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 190 (4th Cir. 2000) (internal quotation omitted). The ALJ cited the corroborating statement of Dr. Nichols and further explained that he "[found] the reports from Dr. Mein to be the most credible in view of his extensive records." We therefore agree with the BRB's determination that the ALJ did not err in deciding to credit the opinion of Dr. Mein on the basis that it was well documented.

2.

The Shipyard also contends that the ALJ failed to properly weigh testimony when determining whether Harris-Smallwood's injury arose out of and in the course of her employment. *See* 33 U.S.C. § 902(2). Harris-Smallwood testified that she was required by the Shipyard to lift heavy objects even after her ten-pound restriction was in place. She maintained that she had to "pull muslin" and work with heavy canvas, whereas Doug Quinn, Harris-Smallwood's supervisor, testified that Harris-Smallwood was required to work only with lightweight materials. The ALJ found Harris-Smallwood's testimony about the work she did more credible than Quinn's because Quinn's knowledge appeared to be limited. The Shipyard maintains that this rationale was insufficient to support the ALJ's decision.

The ALJ had the opportunity to observe both Quinn and Harris-Smallwood during their testimony, and, as we have explained, the duty to assess the credibility of conflicting witnesses lies with him. *See Doss*, 53 F.3d at 658 ("The ALJ is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence."). And we "'may not set aside an infer-

ence merely because [we] find[ ] the opposite conclusion more reasonable or because [we] question[ ] the factual basis.'" *Id.* at 659 (quoting *Smith v. Dir., Office of Workers' Comp. Programs*, 843 F.2d 1053, 1057 (7th Cir. 1988)).

In this circumstance, it may have been helpful if the ALJ had elaborated further on why he found Quinn's knowledge to be limited, but, in light of the testimony presented, the ALJ's conclusion was not unreasonable. Quinn relied only on his memory and did not review records that would have indicated what work Harris-Smallwood had been assigned to do during the relevant time period. In addition, Quinn and Harris-Smallwood both testified that employees had to move rolls of canvas or Facilon (a lightweight material with which Harris-Smallwood worked) that weighed about fifty pounds each, and that they had to lift or carry the rolls onto their work tables. In addition, Harris-Smallwood told her doctors, in the course of seeking medical treatment, that heavy lifting at work was bothering her shoulder. Moreover, Dr. Kline indicated that Harris-Smallwood's supervisor was not working with her to avoid uncomfortable activities. In sum, we conclude that the ALJ's determination that Harris-Smallwood's shoulder problem arose out of her employment was supported by substantial evidence.

C.

Finally, we must consider whether substantial evidence supported the ALJ's determination that the Shipyard was not entitled to relief under section 8(f) of the Act. Pursuant thereto, if a claimant's disability does not result solely from the injury being compensated, the disability benefits, after being paid by the employer for a certain period of time, are paid instead from a special fund. 33 U.S.C. § 908(f); *see also Dir., Office of Workers' Comp. Programs v. Newport News Shipbldg. & Dry Dock Co. (Carmines)*, 138 F.3d 134, 138 (4th Cir. 1998). To obtain relief under section 8(f), an employer must demonstrate that, following a covered injury, "the employee has a permanent partial disability and the disability is found not to be due solely to that injury, and such disability is *materially and substantially greater* than that which would have resulted from the subsequent injury alone . . . ." 33 U.S.C. § 908(f)(1) (emphasis added). Additionally, the employer must present evidence of both the type and the extent of the

disability that the claimant would have suffered when she sustained the subsequent work-related injury if she had not been previously disabled. *See Dir., Office of Workers' Comp. Programs v. Newport News Shipbldg. & Dry Dock Co. (Harcum)*, 8 F.3d 175, 185 (4th Cir. 1993).

The ALJ found that the Shipyard had failed to demonstrate that Harris-Smallwood's disability was materially and substantially greater than it would have been had she suffered only the claimed injury, that is, that her previous injuries made the disability worse than it would otherwise have been. Because the Shipyard failed to prove the type and extent of the disability that Harris-Smallwood would have suffered absent the pre-existing injuries, the ALJ's determination was supported by substantial evidence.

In support of its request for section 8(f) relief, the Shipyard presented the opinion of the Shipyard's medical director, Dr. David Tornberg, who asserted, based on his review of Harris-Smallwood's medical records, that "Ms. [Harris-]Smallwood' [sic] disability is not caused by her October 1995 left shoulder injury alone, but rather her disability is materially contributed to, and made materially and substantially worsened [sic] by her pre-existing permanent degenerative tendinopathy and chronic tendonitis [sic]." Such conclusory statements are insufficient, however, to support a finding in favor of an employer. As we explained in *Carmines*,

> [t]o meet its burden, the employer should have offered evidence from a doctor, such as a treating physician, who could testify to the extent and seriousness of the [disability] suffered by the Claimant and the degree of disability it would have caused alone. . . . Without such evidence, the mere assertion by the employer's in-house physician that the Claimant's ultimate disability was made materially and substantially worse by the pre-existing conditions is not sufficient to warrant § 908(f) relief.

*Carmines*, 138 F.3d at 143-44. Such is the case in the matter before us. The Shipyard failed to present evidence *quantifying* the disability Harris-Smallwood would have suffered from her claimed injury alone; rather, it offered only the unsupported and conclusory assertion

of its in-house physician. The ALJ thus did not err in denying section 8(f) recovery.

## IV.

Pursuant to the foregoing, we must deny the Shipyard's petition for review.

*PETITION FOR REVIEW DENIED*