# United States Court of Appeals
## For the First Circuit

No. 05-1278

VIEQUES AIR LINK, INC.,

Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE UNITED
STATES DEPARTMENT OF LABOR ADMINISTRATIVE REVIEW BOARD

Before

Torruella and Lipez, <u>Circuit Judges</u>,

DiClerico,[*] <u>District Judge</u>.

<u>Luis R. Mellado-González</u> on brief for petitioner.
<u>Howard M. Radzely</u>, <u>Steven J. Mandel</u>, <u>Paul L. Frieden</u>, and
<u>Barbara Eby Racine</u> on brief for respondent.

February 2, 2006

---

[*]Of the District of New Hampshire, sitting by designation.

**Per Curiam**.  Vieques Air Link, Inc. ("VAL") seeks review of the decision of the Department of Labor's Administrative Review Board (the "ARB") affirming an award against the airline in favor of a former VAL pilot, Ángel Negrón.  Following an evidentiary hearing, an administrative law judge for the Department ruled that VAL had violated Section 519 of the Wendell H. Ford Investment and Reform Act for the 21st Century, colloquially known as "AIR 21," by retaliating against Negrón for reporting the airline's violations of federal air safety standards, see 49 U.S.C. § 42121(a), and entered an award in his favor.  Because substantial evidence supported this ruling, we affirm the ARB's decision and deny VAL's petition for review.

## I.

We review the ARB's decision under the standard prescribed by the Administrative Procedure Act.  See 49 U.S.C. § 42121(b)(4)(A).  "Therefore, our task is to determine whether the action 'was consonant with the agency's statutory powers, reasoned, and supported by substantial evidence in the record.'" Conservation Law Found. v. Evans, 360 F.3d 21, 27 (1st Cir. 2004) (quoting 5 U.S.C. § 706(2)(A)-(D)) (bracketing omitted); see also Clean Harbors Envtl. Servs., Inc. v. Herman, 146 F.3d 12, 19 (1st Cir. 1998).  VAL seeks review of the decision solely on the ground that it was unsupported by substantial evidence--a "benchmark []

-2-

notoriously difficult to overcome on appellate review." Bath Iron Works Corp. v. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Clean Harbors, 146 F.3d at 21 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also, e.g., BSP Trans, Inc. v. Dep't of Labor, 160 F.3d 38, 47 (1st Cir. 1998). Although this quantum measures "more than a scintilla, it certainly does not approach the preponderance-of-the-evidence standard normally found in civil cases." Bath Iron Works, 336 F.3d at 56 (internal quotation marks omitted). Furthermore, we "accept the findings and inferences drawn by the ALJ, whatever they may be, unless they are irrational," and respect his or her "prerogative in the first instance to . . . make credibility assessments . . . ." Id. (internal quotation marks omitted); see also Barker v. Dep't of Labor, 138 F.3d 431, 434 (1st Cir. 1998).

**II.**

We see substantial evidence in the administrative record to support the following relevant findings of fact made by the ALJ, which were adopted in their entirety by the ARB. VAL initially suspended Negrón for two days, effective March 1, 2002, following his argument that day with Johnny Ramos-Melendez, the supervisor of the VAL counter at Isla Grande Airport in San Juan. Ramos became

-3-

upset with Negrón when he started using a scale at the counter to verify passengers' weights that Ramos had already entered on the flight manifest. In response, Ramos physically interposed himself between Negrón and the scale; Negrón threatened to call the FAA and the local police.

Ramos used the phone at the counter to call VAL's director of operations, Francisco Cruz, about the situation. Although Cruz asked to speak to Negrón, he was on his cell phone with the police at that point, so he did not pick up the counter phone to talk to Cruz. Cruz then told Ramos to have a different pilot make Negrón's scheduled flight because of his agitated condition. Although there were passengers in the waiting area during the brouhaha, they remained about fifteen feet away and therefore did not see anything out of the ordinary.

Later that day, Negrón called Cruz and gave his own version of the incident, with which Cruz later said he was "satisfied." In fact, less than a week earlier, Cruz had reprimanded Ramos for inaccurately recording passengers' weights on a manifest. Nevertheless, Cruz told Negrón that he was suspended without pay for the balance of the two days remaining in his shift due to the fact that he and Ramos had argued in the presence of passengers. Ramos, for his part, testified that Cruz later told him that he would receive a paid suspension and, furthermore, that Negrón was "too strict in his work" and would be "removed from the

company."[1]  Although Cruz denied making this statement, the ALJ credited  Ramos's version of the meeting, and the ARB in turn accepted the ALJ's resolution of the conflicting testimony.

Negrón sent VAL a letter on March 20, 2002, objecting to his suspension and stating his intention to make a report to the FAA about the March 1 incident and "other irregularities."  In fact, Negrón had alerted the FAA to that incident the day it occurred.  On March 22, 2002, the FAA conducted an inspection of VAL's Isla Grande operations.  VAL's president, Osvaldo Gonzalez, testified that he knew the inspection came about as a result of Negrón's complaint to the FAA.

That evening, VAL's chief pilot, Jimmy Adams, called Negrón at home to tell him that VAL had a letter waiting for him. The letter, signed by Gonzalez and dated March 22, 2002, advised Negrón that he had been suspended without pay for fifteen days for the March 1 incident and for his conduct at a March 19, 2002, meeting between VAL's pilots and its management.  Gonzalez had called the meeting to give Negrón and his fellow pilots an opportunity to air their grievances, but testified that he became upset at Negrón's criticism of the abilities of VAL's management. At the meeting itself, however, Gonzalez had openly praised Negrón for his comments.

---

[1]VAL's vice president later intervened and increased Ramos's punishment to a suspension without pay.

Gonzalez acknowledged that the fifteen-day suspension amounted, at least in part, to a second disciplinary action taken in response to the same March 1 incident. Although Gonzalez denied knowing when he handed down the suspension that Negrón had complained to the FAA, the ALJ did not find this denial credible because of inconsistencies in Gonzalez's testimony on this point. Again, the ARB accepted the ALJ's credibility determination. Negrón wrote to Gonzalez on March 23, 2002, objecting to the suspension on a number of grounds, including that it closely followed the FAA's inspection of VAL's operations for violations of the kind Negrón had previously reported. Gonzalez reviewed the letter, but it failed to sway him.

By late April, Negrón began to believe that Cruz was singling him out by regularly conducting interviews with his passengers after his flights had landed.[2] Negrón communicated this suspicion to Cruz through an April 29, 2002, letter. The letter also noted that, during a meeting earlier that month between an FAA inspector and a number of VAL employees held to reacquaint them with proper weight procedures and other safety standards, the inspector had commended Negrón for reporting irregularities at VAL.

_____

[2]Cruz had also threatened Negrón with disciplinary action for allegedly failing to follow appropriate procedures on an April 10, 2002, flight. Negrón insisted that he acted properly, and it does not appear that anything came of Cruz's threat.

Ten days later, VAL notified Negrón that, effective June 4, 2002, he was to report at the beginning of each workday to the airline's terminal in Vieques, rather than its terminal in Fajardo, on Isla Grande, as he had been. The memorandum informing Negrón of his reassignment explained that he would pilot VAL's first flight out of Vieques to Fajardo at 6 a.m. Upon receiving this news from Adams, Negrón immediately asked how he would get from his home on Isla Grande to the island of Vieques each day, given that he had no access to a boat or a plane and there was no public transportation. Adams made no response.

Negrón raised the logistical problem created by his transfer again in a May 11, 2002, letter to Adams, and, in another letter, dated June 3, 2002, announced that he would report to Fajardo at 5:30 a.m. the next day, when he expected the airline to provide him transportation to Vieques. Negrón indeed showed up at Fajardo as promised, wearing his uniform and carrying the necessary equipment. He was ignored by VAL personnel for most of the day, until another pilot delivered a letter from Cruz reprimanding Negrón for being there and warning him that VAL would consider his employment abandoned if he did not report to Vieques by 6 a.m. the next day. Negrón wrote back that, though he lived in the San Juan area with his wife and two children, as the airline was aware, he had in fact attempted to get to Vieques by 6 a.m. He added that he

was not abandoning his employment and that he planned to report to Fajardo again the next morning to await transportation to Vieques.

In response, Cruz denied that VAL had any responsibility to get Negrón to his new assignment on Vieques. Negrón proceeded to report to Fajardo at 5:30 a.m. on June 5, 2005, despite Cruz's instruction to the contrary. Negrón also wrote another letter to Cruz that day reiterating his desire to keep his job but explaining that he could not afford the costs of traveling to and staying overnight in Vieques, given the expense of maintaining his family in the San Juan area. On June 13, 2002, Cruz notified Negrón that he had abandoned his position by failing to show up at Vieques by 6 a.m. on June 6, 2002, and that he would therefore be replaced.

Gonzalez testified that Cruz made the decision to transfer Negrón. Gonzalez also said, however, that he had a discussion with Cruz about having one of the VAL pilots who lived in Vieques--rather than Negrón, who Gonzalez knew to reside near San Juan--make the first flight out of Vieques each day, but it was decided to assign Negrón to the flight because the pilots living in Vieques had more seniority. VAL, however, did not mention seniority as a reason for the transfer in any of its communications with Negrón on the subject prior to his termination.

Meanwhile, on May 7, 2002, Negrón filed a timely complaint with the Department of Labor alleging that VAL had violated AIR 21 by suspending him on March 22. See 49 U.S.C.

-8-

§ 42121(b)(1). Finding reasonable cause to believe that a violation had, in fact, occurred, both in the form of the suspension and the subsequent transfer and termination, the Department issued a preliminary order in Negrón's favor on November 25, 2002. See id. § 42112(b)(2)(A). VAL objected and requested an evidentiary hearing, see id., which the ALJ conducted between May 19 and May 21, 2003. Following the hearing, the ALJ issued a decision and order concluding that VAL had violated AIR 21 through its treatment of Negrón, ordering his reinstatement with the airline, and awarding him back pay, certain out-of-pocket expenses, and damages for mental anguish. See id. § 42121(b)(3)(B). VAL then sought review of the ALJ's actions before the ARB, which affirmed them in their entirety.

### III.

Section 519 of AIR 21, in relevant part, prevents an airline from discriminating against an employee because he or she "provided . . . to the employer or Federal Government information relating to any violation or alleged violation of any order, regulation, or standard of the [FAA] or any other provision of law relating to air carrier safety under [Title 49, Subchapter VII] or any other law of the United States . . . ." 49 U.S.C. § 42121(a). The ALJ ruled that VAL violated this provision by suspending Negrón twice, then transferring him, because he complained to both

-9-

management and the FAA about several instances where VAL failed to determine the weight aboard one of its planes properly before flying. VAL challenges three of the findings underlying this conclusion, and affirmed by the ARB, on the ground that they were not supported by substantial evidence.

First, VAL argues that the ALJ could not have found that the airline retaliated against Negrón for complaining about possible safety problems because VAL was unaware of those complaints when it suspended and transferred him. The evidence presented to the ALJ, however, vitiates this contention. Just two days after Negrón had notified his employer in writing that he would be reporting the incident of March 1, 2002, to the FAA, an inspector from that agency showed up at VAL. Despite acknowledging that Negrón's report had precipitated this visit, Gonzalez testified that he did not know of the complaint when he issued his suspension of Negrón later that same day. As the ARB determined, the ALJ acted well within his discretion in rejecting that testimony and finding that VAL knew of Negrón's report to the FAA when the airline suspended him on March 22, 2002, and when it announced its decision to transfer him on May 6, 2002.

As to Negrón's initial two-day suspension, effected on March 1, 2002, VAL points out the lack of evidence of its awareness, at that time, that he had made any complaints to the

FAA.[3] AIR 21, however, protects not only those who report air safety violations to the government, but also those who make such reports to their employers. See 49 U.S.C. § 42121(a). The ALJ specifically found that Cruz, VAL's director of operations, knew at the time he suspended Negrón for his argument with Ramos that the argument had arisen out of Negrón's insistence on verifying the passenger weights that Ramos had entered on the manifest. Indeed, before Cruz issued the suspension, he spoke to Negrón, who provided his own account of his confrontation with Ramos. The ALJ supportably found that this account constituted a report of an air safety violation to VAL and, furthermore, that Cruz received the report before taking disciplinary action against Negrón. Accordingly, the ARB did not err in adopting these findings.

Second, VAL challenges the ALJ's determination that reassigning Negrón's first daily flight from Fajardo to Vieques amounted to discrimination with respect to the terms, conditions, or privileges of his employment as proscribed by AIR 21. As an initial matter, we note that the ALJ found that Negrón's transfer amounted to both a constructive discharge and one of the other unspecified types of adverse employment action independently prohibited by the statute, and that the ARB accepted both of these

_____

[3]On February 25, 2002, Negrón called the FAA over an incident where Cruz had allegedly criticized him for taking a plane in for maintenance and delaying the flight schedule as a result. The ALJ did not find, however, that VAL became aware of this report before Negrón's suspension on March 1.

-11-

findings. Unlike the finding that the transfer was simply an adverse employment action, the finding that it amounted to a constructive discharge was essential to the damages Negrón was awarded, so we focus on that aspect of the ALJ's decision. See Serrano-Cruz v. DFI P.R., Inc., 109 F.3d 23, 28 (1st Cir. 1997).

"To prove that he was constructively discharged, [an employee] must show that the new 'working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.'" Mercado-Alicea v. P.R. Tourism Co., 396 F.3d 46, 52 (1st Cir. 2005) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 54 (1st Cir. 2000)). In concluding that Negrón had suffered a constructive discharge, the ALJ noted that, after learning of his transfer to Vieques, Negrón repeatedly asked his employer for assistance in getting there by 6 a.m. each day, but received no response whatsoever. Nevertheless, Negrón made his own, albeit unsuccessful, effort to comply with his new assignment, which included showing up ready for work at Fajardo at 5:30 a.m. with the hope that VAL would get him to Vieques by 6. Although VAL argued that Negrón could have simply joined some of his fellow pilots in securing overnight accommodations in Vieques, the ALJ relied on Negrón's testimony that he could not afford the additional costs of staying there, while maintaining his young family in the San Juan area, on his weekly salary of $330.75.

"Doubtless a drastic increase in commuting time and unreimbursed costs might at some point become sufficiently onerous to justify an employee in quitting." Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 120 (1st Cir. 1977) (footnote omitted). The ALJ had sufficient evidence before him to support his conclusion that the transfer to Vieques imposed such conditions on Negrón and therefore amounted to a constructive discharge.

Third, VAL disputes the ALJ's finding that the transfer, as well as the two suspensions that preceded it, were motivated by Negrón's reports of safety violations to the FAA and to VAL itself. AIR 21 puts the burden on the employee to show that his or her protected behavior under the statute "was a contributing factor" in the adverse employment action suffered. 49 U.S.C. § 42121(b)(2)(B)(iii). If the employee carries this burden, the employer nevertheless avoids liability if it "demonstrates by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of that [protected] behavior." Id. § 42121(b)(2)(B)(iv).

In accordance with this framework, the ALJ found, and the ARB agreed, that Negrón had demonstrated that his complaints of safety violations contributed to both of his suspensions and his transfer, and that VAL had failed to show the contrary by clear and convincing evidence. The ALJ concluded, as a result, that VAL had taken the adverse employment actions against Negrón because of his

complaints in violation of section 42121(a). This approach comports with the general rule in employment discrimination cases that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000); see also Currier v. United Techs. Corp., 393 F.3d 246, 255 (1st Cir. 2004). Furthermore, we see substantial evidence in the administrative record to support the ALJ's determinations that, in the case of each unfavorable personnel action, Negrón succeeded in showing that it arose from his safety complaints and that VAL failed to prove that those complaints were unconnected to its decisions. We explain briefly.

Both the March 1 and the March 22 suspension followed almost immediately on the heels of reports Negrón made about air safety violations at VAL. The ALJ permissibly treated the temporal proximity between the reports and the suspensions as sufficient to show the requisite causal relationship. See Bechtel Constr. Co. v. Sec'y of Labor, 50 F.3d 926, 934 (11th Cir. 1995) (applying identical standards of whistleblower protection provisions of Energy Reorganization Act).

The ALJ also supportably found that VAL's attempts to explain these disciplinary actions as unconnected to Negrón's safety complaints did not wash. Although VAL claimed it suspended

-14-

Negrón on March 1 because he had argued with Ramos in front of the airline's passengers, Ramos testified that the passengers had remained far enough away that they would not have perceived that anything was amiss. The ALJ also noted the conflict between the decision to suspend Negrón and Cruz's testimony that he was satisfied with Negrón's explanation for the incident, as well as the less severe sanction Cruz imposed on Ramos even though he had been caught violating FAA weight regulations for the third time. If this were not enough, the ALJ also found that Cruz had told Ramos, in discussing the March 1 incident, that Negrón was "too strict in his work" and would be "removed from the company."

For similar reasons, the ALJ disbelieved VAL's proffered reasons for suspending Negrón for two weeks beginning on March 22. VAL justified the action as an additional penalty for the March 1 incident and as a sanction for Negrón's disrespectful comments about VAL's management during the March 19 meeting. The ALJ noted that VAL's witnesses had failed to come up with any reason why it would have punished Negrón twice for the same alleged misconduct, particularly when, again, Ramos had been punished only once for actions that were at least as objectionable. The ALJ also pointed out that basing the suspension on Negrón's comments at the meeting conflicted with the facts that (1) VAL had called the meeting specifically to allow its pilots to air their grievances and

(2) Gonzalez had offered nothing but praise for Negrón's comments at the meeting itself. In light of these deficiencies in VAL's explanation, the ALJ acted well within his discretion in rejecting it and concluding that the fallout from Negrón's report to the FAA at least contributed to his suspension immediately thereafter.

In finding that Negrón had shown that his contacts with the FAA precipitated his transfer to Vieques, the ALJ again relied on the fact that the contacts closely preceded the personnel action. In particular, the ALJ noted that, in a letter of April 29, 2002, Negrón had mentioned that he had been praised by an FAA inspector during his meeting with VAL employees for bringing safety concerns to the agency's attention, only to receive word of the transfer a week later, on May 6, 2002.

VAL contended that it needed someone to pilot its new 6 a.m. flight out of Vieques and that it selected Negrón, as opposed to one of the pilots already living on that island, simply because he was the least senior. The ALJ, however, did not accept this explanation, largely because VAL had not cited Negrón's lack of seniority as the reason for his transfer until the hearing itself. As the ARB noted in concurring with the ALJ on this point, the fact that an employer offers shifting explanations for its challenged personnel action can itself serve to demonstrate pretext. E.C. Waste, Inc. v. NLRB, 359 F.3d 36, 44 (1st Cir. 2004). There was substantial evidence, then, to support the conclusion that Negrón's

complaints to the FAA contributed to the decision to reassign him to Vieques. We therefore conclude that the ARB properly affirmed the ALJ's decision that VAL suspended and transferred Negrón because of his reports of safety violations to both the FAA and VAL.

Finally, VAL challenges certain aspects of the relief awarded to Negrón, namely $50,000 in compensatory damages for mental anguish and $15,961.48 in attorneys' fees. In fixing the noneconomic damage award, the ALJ relied on Negrón's testimony that he struggled to support his wife and two infant children while he looked for new full-time employment following his termination by VAL. Although Negrón found a new job by mid-September, 2002, in the meantime he was forced to sell both of his family's modest cars and deplete their meager savings to make ends meet. Negrón specifically testified that this ordeal caused him suffering and pain. The ALJ noted that like circumstances had justified similar awards in a number of cases which had come before the ARB; for its part, the ARB agreed with this assessment. Accordingly, we believe that substantial evidence supported the $50,000 award that Negrón received for the mental anguish caused by his termination.

Following his decision on the merits of Negrón's claims, the ALJ issued a separate order awarding Negrón his attorneys' fees in prosecuting his complaint to the Department of Labor that VAL had violated AIR 21. VAL, however, did not challenge the fee award

before the ARB.  By Department rule, "[a]ny party desiring to seek review, including judicial review, of a decision of the administrative law judge . . . must file a written petition for review with the [ARB] . . . .  Any exception not specifically urged ordinarily shall be deemed to have been waived by the parties."  29 C.F.R. § 1979.110.  Relying on this rule, the ARB simply treated the ALJ's award of attorneys' fees as final in the absence of any objection from VAL.  We must therefore do the same.  See Trafalgar Capital Assocs. v. Cuomo, 159 F.3d 21, 36 n.15 (1st Cir. 1998) (citing Darby v. Cisneros, 509 U.S. 137, 153-54 (1993)).


## IV.

For the foregoing reasons, VAL's petition for review of the ARB's decision is DENIED.


SO ORDERED.